# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| IVY MARINE CONSULTING, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 17-0563-WS-N |
| | ) | |
| MONARCH ENERGY PARTNERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter comes before the Court on plaintiff's Motion for Summary Judgment (doc. 61) and defendant's Motion to Strike Portions of Exhibit C (doc. 63). Although the parties did not fully avail themselves of briefing opportunities, both Motions are now ripe.

## I.    Factual Background.[1]

This action concerns an alleged breach of a charter agreement entered into between plaintiff, Ivy Marine Consulting, LLC, and defendant, Monarch Energy Partners, Inc. The barebones, single-count First Amended Complaint (doc. 16) alleges that Ivy Marine leased a certain barge vessel to Monarch Energy, but that Monarch Energy defaulted under the charter agreement by (i) failing to pay the $850 daily hire rate for 59 days, totaling $50,150; and (ii)

---

[1]    The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016) ("It is not this Court's function to weigh the facts and decide the truth of the matter at summary judgment. … Instead, where there are varying accounts of what happened, the proper standard requires us to adopt the account most favorable to the non-movants.") (citations and internal quotation marks omitted). Accordingly, the record will be viewed in the light most favorable to Monarch Energy, with all justifiable inferences drawn in its favor. Also, federal courts cannot weigh credibility at the summary judgment stage. *See Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013) ("Even if a district court believes that the evidence presented by one side is of doubtful veracity, it is not proper to grant summary judgment on the basis of credibility choices."). Therefore, the Court will "make no credibility determinations or choose between conflicting testimony, but instead accept[s] [defendant]'s version of the facts drawing all justifiable inferences in [its] favor." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).

failing to return the vessel in a "gas free condition suitable to load #2 diesel," which will cost Monarch Energy the sum of $57,775 to restore the vessel to that condition.  (Doc. 16, ¶¶ 7-8.)  On that basis, Ivy Marine demands judgment against Monarch Energy in the total amount of $110,150, plus interest and court costs.[2]  Federal jurisdiction is predicated on the diversity provisions of 28 U.S.C. § 1332.

The parties entered into a Standard Time Charter (the "Agreement"), pursuant to which Ivy Marine agreed to let, and Monarch Energy agreed to hire, a barge vessel known as the MB6 (the "Barge") at the rate of $850 per day, with an "on hire" date of July 6, 2017.  (Doc. 61, Exh. A, at 1.)  Monarch Energy agreed to pay that charter hire 30 days in advance and no later than 5 days after receiving an invoice, with late fees to be assessed at 12% per annum for payments not received by the applicable due date.  (*Id.* at § 2.E.)  The parties further agreed that the lease was for a period of five months and 29 days.  (*Id.* at Amendment A.)  An Amendment to the Agreement specified as follows: "If the barge is not returned to a fresh water port within the five months, twenty-nine days, there will be a penalty of $25,000, and the charter agreement will continue until the MB 6 is returned to Ivy in a 'cleaned' state."  (*Id.*)

By the express terms of the Agreement, "Redelivery shall be made after the barge has been cleaned to the satisfaction of Ivy Marine, LLC and the owner of the barge, MB Barge."  (*Id.* at § 2.A.)  The Agreement was devoid of any other description of the degree or specific nature of this "cleaning" requirement.  It did not purport to delineate terms, degrees or standards for cleaning such as "gas-free" or "clean to diesel fuel."  Nor were such terms discussed at any time during the negotiation or execution of the Agreement.  (Shrader Aff. (doc. 65, Exh. 1), ¶ 8.)

---

[2]      The Amended Complaint does not explain the discrepancy between the sum of the two components of contract damages claimed ($50,150 + $57,775 = $107,925) and the $110,150 demand in the *ad damnum* clause.  For its part, Monarch Energy is pursuing a Third-Party Complaint (doc. 14) against third-party defendant, Sariel Petroleum, LLC, on the ground that Sariel Petroleum sub-chartered the barge from Monarch Energy and delivered it to Ivy Marine.  Monarch Energy posits that Sariel Petroleum is liable in contribution and indemnity, under the doctrine of *quantum meruit*, and for use and benefit of the barge, and seeks to recover on that basis any sums that may be adjudicated in Ivy Marine's favor against Monarch Energy.  No Rule 56 motions have been filed with respect to the Third-Party Complaint; indeed, it appears from the docket sheet that Monarch Energy has never successfully served process on Sariel Petroleum.  The proof of service required by Rule 4(*l*), Fed.R.Civ.P., has not been filed, Sariel Petroleum has never appeared in this action, and the most recent alias summons was issued back on May 24, 2018.  (*See* doc. 46.)

Ivy Marine maintains that Monarch Energy breached the Agreement in two respects that form the basis of this litigation. First, plaintiff's evidence is that Monarch Energy failed to pay the agreed daily charter rate of $850/day for a 59-day period of the agreed term, running from November 2, 2017 through December 31, 2017. (Boles Aff. (doc. 61, Exh. C), ¶ 4.) For this alleged breach, Ivy Marine seeks to recover unpaid charter amounts of $50,150, plus interest. Defendant's evidence shows that at some unspecified time during the charter term, "a tug picked the barge up from Ivy and departed with it for Lake Charles. It was gone about 20 days. [Monarch Energy] did not arrange or pay for the tug nor send the barge to Lake Charles." (Shrader Aff., ¶ 19.)[3] Monarch Energy's position is that it is not responsible for the daily charter rate during that period. Defendant's evidence also reflects that Ivy Marine rented the Barge to a company called Rio Petroleum for at least some portion of the time period spanning December 19, 2017 through January 2, 2018. (Id., ¶ 21.) Monarch Energy objects that Ivy Marine has not given it credit for the Rio Petroleum rental period. (Id.)

Second, Ivy Marine contends that Monarch Energy breached the Agreement by failing to comply with the requirement that the Barge be returned in a condition that was "cleaned to the satisfaction of Ivy Marine." Monarch Energy conceded in a deposition that it did not clean the Barge upon redelivering it to Ivy Marine. (Shrader Dep., at 112.)[4] However, defendant's

---

[3]     The record shows that Monarch Energy had sold the product in the Barge to third-party defendant, Sariel Petroleum, which had resold the product to Harvest Fuels, and that Sariel Petroleum and Harvest "wanted the product in Lake Charles, LA." (Id., ¶ 17.) Thus, the transport of the Barge to Lake Charles was done to effectuate the sale that Monarch Energy had made of product onboard the Barge.

[4]     To establish the cost of cleaning the Barge, Ivy Marine includes in Exhibit C evidence of two estimates furnished by Oil Recovery Corporation, one dated December 19, 2017 in the amount of $57,775 and the other dated December 10, 2018 in the amount of $69,153. (Doc. 61, Exh. C.) It appears that these cleaning services were never performed. Monarch Energy has filed a Motion to Strike (doc. 63) these aspects of Exhibit C as undisclosed expert opinions that violate Rule 26(a)(2), Fed.R.Civ.P. Plaintiff elected not to respond to the Motion to Strike. Myriad federal courts have held that opinions as to cost estimates for repairs and other services constitute expert testimony within the scope of Rule 702, Fed.R.Evid., and are therefore subject to the disclosure requirements of Rule 26(a)(2). *See, e.g., Pendarvis v. American Bankers Ins. Co. of Florida*, 354 Fed.Appx. 866, 869 (5th Cir. Nov. 30, 2009) (estimate for repair costs for mobile home "require[s] specialized knowledge of construction and repair work" and is properly viewed as expert, not lay, testimony); *Armstead v. Allstate Property & Cas. Ins. Co.*, 2016 WL 928722, *5 (N.D. Ga. Mar. 11, 2016) (witnesses' "opinions on damage, repair and (Continued)

evidence is that Monarch Energy returned the Barge to Ivy Marine "in the same condition it was received," and that Ivy Marine neither cleaned nor caused the Barge to be cleaned at any time since 2010. (Shrader Aff., ¶ 10; Wilson Dep. (doc. 65, Exh. 5), at 40-41, 51.) In fact, defendant shows that Ivy Marine returned the Barge to "the same service carrying the same material following the expiration of Monarch's agreement with them." (Shrader Aff., ¶ 10.) Thus, defendant's failure to clean the Barge did not compromise plaintiff's ability to lease it.

## II.     Summary Judgment Standard.

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the non-movant to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-*

---

restoration are expert opinions subject to Rule 702," including repair estimates); *Providence Piers, LLC v. SMM New England, Inc.*, 2015 WL 9699936, *7 (D.R.I. Oct. 1, 2015) ("estimating the cost of future work is generally the subject of expert testimony"); *Montalvo v. American Family Mut. Ins. Co.*, 2014 WL 2986678, *6 (D. Ariz. July 2, 2014) (witness's "testimony regarding the estimate repair costs falls within the scope of specialized knowledge," such that the "proffered testimony is expert testimony within the scope of FRE 702"); *Bray v. Gillespie IX, LLC v. Hartford Fire Ins. Co.*, 2009 WL 1953649, *4 (M.D. Fla. July 6, 2009) ("Any opinions as to the cost to repair are within the purview of expert testimony, and Plaintiff's failure to designate and tender the witnesses as experts forecloses their use as such at trial."). Ivy Marine did not timely disclose the Oil Recovery opinions as to cleaning cost estimates. Such omission was neither substantially justified nor harmless; therefore, exclusion of that evidence is warranted under Rule 37(c)(1), Fed.R.Civ.P. The Motion to Strike is **granted** and the Oil Recovery cleaning estimates are **stricken** for summary judgment purposes.

*Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).
"Summary judgment is justified only for those cases devoid of any need for factual determinations." *Offshore Aviation v. Transcon Lines, Inc.*, 831 F.2d 1013, 1016 (11th Cir. 1987) (citation omitted).

## III. Legal Analysis.

In its minimalist Motion for Summary Judgment, supported by a brief spanning barely two pages in length and with no reply, Ivy Marine moves for judgment as a matter of law in its favor on the claim for breach of the charter agreement. Plaintiff's contention is that it is entitled to summary judgment as to both components of the claim, namely Monarch Energy's alleged (i) failure to pay the charter rate for 59 days of the agreed term; and (ii) failure to satisfy the contractual requirement that the Barge be returned to Ivy Marine in a "cleaned" state.

"In order to establish a breach-of-contract claim, a plaintiff must show (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *City of Gadsden v. Harbin*, 148 So.3d 690, 696 (Ala. 2013) (citations and internal quotation marks omitted). Ivy Marine's position, stated simply, is that the record unambiguously reflects that it has satisfied all of these elements with regard to both the failure-to-pay-charter and the failure-to-clean aspects of its claim against Monarch Energy for breach of the Agreement.

### A. Breach by Failure to Pay Daily Charter Rate.

As discussed *supra*, Ivy Marine has presented record evidence showing the existence and validity of the Agreement binding the parties. The record also shows that Ivy Marine furnished (or caused to be furnished) the Barge to Monarch Energy as required under the Agreement, but that Monarch Energy failed to pay the daily charter rate for a portion of the agreed lease term. None of these record facts are controverted, disputed or challenged by Monarch Energy on summary judgment. Nor has defendant articulated any defense to liability for plaintiff's claim that Monarch Energy breached the Agreement by failing to pay the charter rate as agreed. As such, the Court finds that there is no genuine issue of material fact and that Monarch Energy is liable to Ivy Marine on the failure-to-pay-charter portion of the breach of contract claim. Plaintiff's Motion for Summary Judgment is therefore **granted** as to Monarch Energy's liability in contract to Ivy Marine for failure to pay the daily charter rate through the end of the agreed, written term set forth in the Agreement.

With respect to damages, however, the factual landscape is far murkier. To be sure, Ivy Marine's evidence is that Monarch Energy paid none of the $850 daily charter rate for the last 59 days of the agreed term, running from November 2, 2017 through December 31, 2017. This would equate to contractual damages of $50,150, plus interest. In response, however, Monarch Energy invokes the doctrine of mitigation of damages. Under Alabama law, "[g]enerally, an injured party is required to mitigate his damages in a reasonable manner consistent with what an ordinarily prudent person would do in similar circumstances." *Carnival Cruise Lines, Inc. v. Goodin*, 535 So.2d 98, 103 (Ala. 1988) (citations omitted); *see also Avco Financial Services, Inc. v. Ramsey*, 631 So.2d 940, 942 (Ala. 1994) ("a plaintiff can recover only for that damage or loss that would have been sustained if the plaintiff had exercised such care as a reasonably prudent person would have exercised under like circumstances to mitigate the damage or loss"). "Whether a party has sufficiently mitigated his damages is a question of fact." *Goodin*, 535 So.2d at 103. Additionally, it is well settled that "damages awarded for breach of contract should return the injured party to the position he would have been in had the contract been fully performed." *Target Media Partners Operating Co. v. Specialty Marketing Corp.*, 177 So.3d 843, 861 (Ala. 2013) (citations omitted). A corollary to that proposition is that an "injured party is not to be put in a better position by a recovery of damages for the breach than he would have been in if there had been performance." *Century Automotive Group v. Structure Designs, LLC*, 168 So.3d 64, 67 (Ala.Civ.App. 2014) (citation omitted).

Monarch Energy contends that it would run afoul of these principles to award Ivy Marine the full $50,150 it seeks for breach of contract as to the failure to pay the daily charter rate. In particular, defendant points to record evidence supporting a reasonable inference that Ivy Marine rented the Barge to a third party called Rio Energy (also called Rio Petroleum in the record) for some period of time in December 2017. (Doc. 65, Exh. 4.) From that evidence, however, it is unclear how long the Barge was chartered to Rio Energy. The exhibit bears the calendar entries "MB6 – Rio Energy" for just five days in December, but Monarch Energy says it is entitled to an offset for a 15-day rental, including days where the exhibit shows entries reading "Barge in NOLA (Off Charter)." (*Id.*) If the Barge was "Off Charter" at that time, then what record basis is there for defendant's contention that Ivy Marine received a daily charter rate for those days in mitigation of its damages caused by Monarch Energy's breach? Defendant does not say. Furthermore, while defendant asserts that Ivy Marine received $850 per day for the Rio Energy

charter, it cites generically to the 83-page deposition of Michael Wilson for that proposition, with no pinpoint citation as required by the Local Rules of this District Court.[5] The Court will not scour an entire deposition transcript to seek out evidentiary support for defendant's statement.

To compound the confusion as to mitigation of damages, Monarch Energy also claims a credit for 20 days of the daily charter rate for the period during which "someone other than Monarch" arranged to take the Barge to Lake Charles, Louisiana to deliver product that Monarch Energy had sold to a third party. However, defendant's evidence does not reflect the exact period of time it was without service of the Barge, saying only that it was "about 20 days." More fundamentally, it is far from clear why Monarch Energy should be entitled to a credit (and why Ivy Marine should be deprived of the agreed-upon daily charter rate) for a time period in which the Barge was moved to Louisiana to complete a sale that Monarch Energy itself had made. This uncertainty is exacerbated by the paucity of record evidence linking this 20-day period to anything Ivy Marine did or did not do, much less the reasons why what Monarch Energy says should have been an 8-day trip turned into an "about" 20-day trip. On this record, there are simply too many unanswered questions about the Barge's voyage to Lake Charles to know whether, how and to what extent it might factor into a mitigation of damages analysis for the breach-of-contract claim as it relates to Monarch Energy's failure to pay the daily charter rate.

In sum, while the summary judgment record unequivocally supports a finding that Monarch Energy is liable to Ivy Marine for failure to pay the agreed-upon daily charter rate, the presence of considerable factual gaps in the summary judgment record renders it impossible to ascertain whether and to what extent certain sums should be deducted from the gross amount of lost charter fees (59 days x $850/day, or $50,150) pursuant to Alabama principles of mitigation of damages and prohibition of double recoveries. These fact issues – which plaintiff did not attempt to clarify or resolve via a reply brief – necessitate that summary judgment be **denied** as to damages and that the question of damages be submitted to the finder of fact at trial.

### B. *Breach by Failure to Return Barge in "Cleaned" Condition.*

Recall that Ivy Marine's breach-of-contract claim also alleges that Monarch Energy breached the Agreement by failing to return the Barge in a "clean" condition. Plaintiff moves for

---

[5] *See* Civil L.R. 56(b) ("The non-movant's brief must include … all facts relied upon, ***each supported by a specific, pinpoint citation to the record*** ….") (emphasis added).

summary judgment on this aspect of the claim as well; however, myriad disputed issues of material fact preclude granting the requested relief at this time.

By its plain language, § 2.A. of the Agreement provided that "[r]edelivery shall be made after the barge has been cleaned to the satisfaction of Ivy Marine, LLC and the owner of the barge, MB Barge." However, the Agreement did not specify any parameters for what this "cleaned" requirement might entail. Of course, Alabama law has long provided that "in every contract there exists an implied covenant of good faith and fair dealing." *Lloyd Noland Foundation, Inc. v. City of Fairfield Healthcare Authority*, 837 So.2d 253, 267 (Ala. 2002) (citation omitted). Likewise, the *Restatement (Second) of Contracts* clarifies that where (as here) an agreement "does not make it clear that it requires merely honest satisfaction, it will not usually be supposed that the obligee has assumed the risk of the obligor's unreasonable, if honest, dissatisfaction. In such a case, to the extent that it is practicable to apply an objective test of reasonable satisfaction, such a test will be applied." *Comment b*, § 228.

These principles suggest that Ivy Marine's satisfaction with the "cleaned" condition of the Barge upon its return is subject to a reasonableness requirement. Plaintiff does not argue otherwise. Defendant's evidence (which must be credited for summary judgment purposes) is that, while Monarch Energy did not affirmatively clean the Barge, it returned the Barge to Ivy Marine in the same condition it was received. This evidence supports a reasonable inference that Monarch Energy did not breach the "cleaned" requirement of the Agreement because it redelivered the Barge to Ivy Marine in exactly the same condition, such that Ivy Marine could not reasonably have been dissatisfied with the condition of the Barge at that time. Moreover, Ivy Marine immediately leased the Barge to third parties following its redelivery by Monarch Energy, to perform the same kind of work it had performed previously. This evidence supports a reasonable inference that Ivy Marine expended no funds out-of-pocket to clean the Barge and lost no money in charter fees to lease it to third parties because of its purportedly "dirty" condition. In short, there are genuine issues of material fact as to (i) whether Monarch Energy breached the "cleaned" requirement of the Agreement at all, and (ii) even if it did, whether Ivy Marine incurred damages as a result.[6] Summary judgment is therefore inappropriate in

_____

[6]     These are not the only potentially problematic features of the "failure to clean" claim. For example, the fact that Ivy Marine immediately returned the Barge to service and (Continued)

plaintiff's favor on this aspect of the contract cause of action. The entire claim relating to Monarch Energy's failure to clean the Barge upon redelivery shall proceed to trial.

## IV. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1.    Defendant's Motion to Strike (doc. 63) is **granted** and the Oil Recovery cleaning estimates are **stricken** for noncompliance with expert disclosure requirements;

2.    Plaintiff's Motion for Summary Judgment (doc. 61) is **granted in part**, and **denied in part**. The Motion is **granted** as to the liability portion of plaintiff's claim that defendant breached the charter agreement by failing to pay the daily charter rate for the entire term of such agreement. That issue having been conclusively determined as a matter of law, the jury will be instructed at trial that Monarch Energy breached the charter agreement in this manner. On the question of damages, as well as all other aspects of the breach-of-contract claim, plaintiff's Motion for Summary Judgment is **denied**;

3.    Defendant is **ordered**, on or before **March 19, 2019**, to file proof of service as to third-party defendant, Sariel Petroleum, or to show cause why that third-party claim should not be dismissed pursuant to Rule 4(m), Fed.R.Civ.P., as well as for failure to prosecute; and

4.    The parties are reminded that this action is set for Final Pretrial Conference before the undersigned on **April 16, 2019** at **10:00 a.m.**

DONE and ORDERED this 13th day of March, 2019.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

never cleaned it (apparently through the present day) based on Monarch Energy's charter could support a reasonable finding that Ivy Marine waived the "cleaned" provision of the Agreement. Additionally, on this record, Ivy Marine is unable to prove its damages for failure to clean because the two cleaning estimates it submitted from Oil Recovery have been stricken for violation of expert disclosure requirements.